**In re McCALLA INTERIORS, INC., Debtor.**

**James R. Kandel, Trustee, Plaintiff,**

v.

**Mrs. Josette McCalla, et al., Defendants.**

**Bankruptcy No. 95–61071.**
**Adv. No. 97–6039.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 14, 1998.

Edwin H. Breyfogle, Massillon, OH, for debtor.

Anthony J. DeGirolamo, Roetzel & Andress, Akron, OH, for plaintiff.

Mark W. Iannotta, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, OH, for defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is the Second Amended Complaint of the Plaintiff, James R. Kandel, the Chapter 7 Trustee (Trustee) for McCalla Interiors, Inc. (Debtor), seeking a finding that the Defendant, now known as Josette Holland, (hereinafter, Mrs. Holland or Holland) breached her fiduciary duty to the Debtor corporation by usurping corporate opportunities that were in the Debtor's line of business. The Trustee also alleges that Mrs. Holland breached her fiduciary duty to the Debtor by transferring its customer lists and corporate opportunities to another business formed by Mrs. Holland called "Beau Maison." Moreover, the Trustee seeks to impose liability upon Mr. James Binge, the accountant for the Debtor, as a co-conspirator with Mrs. Holland in usurping the corporate opportunities of the Debtor. A trial was conducted and the matter was taken under advisement. For the reasons stated below, the Trustee's demand for relief will be DENIED.

## FACTS

The Debtor was operated by Mrs. Holland and her former husband, Gary McCalla, as an interior design business. On or about August 30, 1988, the Debtor obtained a loan in the amount of $150,000.00 from the Central Trust Company of Northeastern Ohio, N.A. as the predecessor to Banc One, N.A. This loan was guaranteed by both Mrs. Holland and Gary McCalla. Mrs. Holland was the sole shareholder of the Debtor and both she and Gary McCalla were its officers. In 1994, Mrs. Holland commenced divorce proceedings against Gary McCalla. Gary McCalla was removed as an officer of the Debtor leaving Mrs. Holland as the Debtor's sole shareholder and officer. The Debtor reported a loss in 1994 of $3,794.00 and still owed a balance of $123,457.00 on its note with Banc One. The note with Banc One was secured by all of the Debtor's assets. The Debtor reported assets of $72,349.00 against liabilities of $26,261.00 in 1994. Mrs. Holland received a salary of $16,800.00 in 1994. In late 1994 or early 1995, Banc One insisted upon an increased payment schedule of $3,000.00 per month. The Debtor's assets were subsequently surrendered because no payments were made to Banc One after December, 1994.

In the latter part of 1994, Mrs. Holland, with the assistance of her accountant, James Binge, formed a series of trusts known collectively as the "Common Law Business Trust." The Common Law Business Trust consisted of a set of trusts including an "Asset Management Trust", a "Charitable Trust", a "Vehicle Trust", and a "Business Trust." The "Business Trust" is the owner of Beau Maison which is Mrs. Holland's existing interior design business.

On April 11, 1995, Mrs. Holland and her former husband entered into a separation agreement which provided that Mrs. Holland would be the owner of the new corporation entitled Beau Maison. All tangible assets of the Debtor were later surrendered to Banc One. Beginning in March or April, 1995, the "Business Trust" began operating Beau Maison from the same location where the Debtor had operated. On June 15, 1995, the Debtor filed its petition for relief under Chapter 11 of Title 11 of the United States Code. Mrs. Holland continued to operate Beau Maison as an interior design business. The Trustee alleges that Beau Maison distributed over $177,000.00 to Mrs. Holland in 1995.

The Trustee claims that the "Common Law Business Trust" was created to insulate Mrs. Holland from personal liability for the Debtor's obligations. This "Business Trust", in essence, owned all of the assets used by Mrs. Holland, including her residence. The Trustee asserts that the "Business Trust" operated Beau Maison using the same inventory, equipment, employees, customer lists, and telephone number as the Debtor. The Trustee supports this claim by introducing evidence of correspondence sent by Mrs. Holland to customers informing them of the change in business name but that the new business would continue to provide identical services as the Debtor. The Trustee argues that these customers of Beau Maison were former clients of the Debtor who either had existing contracts with the Debtor or were placed on the Debtor's customer list. In effect, the Trustee claims that Mrs. Holland breached her fiduciary duty to the Debtor by usurping corporate opportunities, namely the Debtor's customers, for Beau Maison for her own personal benefit. Moreover, the Trustee states that the Debtor was fully capable of performing services for these customers and that there was no legitimate business reason to close the Debtor's operations and open as Beau Maison.

Accordingly, the Trustee alleges that Mrs. Holland breached her fiduciary duty to the Debtor under Ohio Revised Code § 1701.59 for usurping the Debtor's corporate opportunities. The Trustee further claims that Mrs. Holland breached her fiduciary duty by transferring the Debtor's assets which were held in trust to Beau Maison. The Trustee also sets forth a count of civil conspiracy against Mrs. Holland and Mr. Binge alleging that Mr. Binge assisted Mrs. Holland in forming the "Common Law Business Trust" and transferring the Debtor's corporate opportunities to this entity. Lastly, the Trustee requests an accounting of the funds held in the "Common Law Business Trust."

**660**

Mrs. Holland, however, testified that in the spring of 1995, she sought the advice of Mr. Binge and determined that the Debtor was no longer a viable corporate entity based on the fact that the Debtor could not make the increased monthly payments of $3,000.00 to Banc One. She stated that the Debtor was never a profitable entity because of this obligation and her ex-husband's mismanagement of the Debtor's assets. Mrs. Holland testified that the "Common Law Business Trust" was formed for tax purposes and to insulate her income from her ex-husband. Mrs. Holland confirmed that Beau Maison began operating in April, 1995, out of the same location as the Debtor, with new inventory purchased through the credit of David Holland, who is Mrs. Holland's present husband. Mrs. Holland further testified that all of the Debtor's inventory was surrendered to Banc One pursuant to its security agreement. Furthermore, Mrs. Holland stated that the customer lists in question, which the Trustee alleges were corporate opportunities of the Debtor, belonged to her individually because the customers sought her expertise, not the Debtor's, and she, in essence, functioned as the Debtor.

Mr. Binge testified that he had served as the Debtor's accountant since 1992. In 1994, Binge stated that he had discussed with Mrs. Holland the possibility of restructuring her business in light of her divorce and because the Debtor was no longer a viable corporate entity. Mr. Binge testified that the formation of the "Common Law Business Trust" was accomplished by attorneys and he merely advised Mrs. Holland of the benefits of such a device. Mr. Binge further testified that the Debtor's stock was not transferred to the "Common Law Business Trust" because it had no value. It was determined at trial that Mr. Binge did not receive any income from the operations of the Debtor or Beau Maison other than his fees for accounting services.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(H) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Breach of Fiduciary Duty under Ohio Revised Code § 1701.59

■ Both parties agree that the standard of care a director owes to a corporation is codified in Ohio Revised Code § 1701.59. That section provides in pertinent part:

(B) A director shall perform his duties as a director, ... in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by:

.    .    .    .    .

(2) Counsel, *public accountants,* or other persons as to matters that the director reasonably believes are within the person's professional or expert competence;

.    .    .    .    .

(C) For purposes of division (B) of this section:

(1) A director shall not be found to have violated his duties under division (B) of this section unless it is proved by *clear and convincing* evidence that the director has not acted in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances, in any action brought against a director, including actions involving or affecting any of the following:

.    .    .    .    .

(c) His service in any other position or relationship with the corporation.

.    .    .    .    .

(D) A director shall be liable in damages for any action he takes or fails to take as a director only if it is proved by clear and convincing evidence in a court of competent jurisdiction that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation.....
(E) For purposes of this section, a director, in determining what he reasonably believes to be in the best interests of the corporation, shall consider the interests of the corporations's shareholders, and, in his discretion, may consider any of the following:
(1) The interests of the corporation's employees, suppliers, creditors, and customers;

.    .    .    .    .

(4) The long-term as well as the short-term interests of the corporation and its shareholders, including the possibility that these interests may be best served by the continued independence of the corporation.

.    .    .    .    .

O.R.C. § 1701.59. (emphasis added)

█ Pursuant to the statute, it is clear that the Trustee, in order to prevail on his Complaint, must prove by clear and convincing evidence that Mrs. Holland breached her fiduciary duty to the Debtor. The general rule in Ohio regarding the breach of fiduciary duty through the usurpation of corporate opportunities has been summarized as follows:

[I]t is a general rule of equity jurisprudence that officers and directors of a corporation, who acquire knowledge and information, in their fiduciary capacity, of investment or other business opportunity, in the line of their corporation's business, cannot appropriate that opportunity of financial or business gain for themselves as individuals, if the opportunity would be advantageous to their corporation *and the corporation is financially able to accept the opportunity and make the advantageous acquisition.*

*Hubbard v. Pape,* 2 Ohio App.2d 326, 329, 203 N.E.2d 365, 368 (1964) (emphasis added). The Trustee claims that he meets this heavy burden by showing that Mrs. Holland usurped corporate opportunities available to the Debtor in the form of customer lists for the benefit of Beau Maison. The Trustee cites to a decision entitled *Frank Lerner & Associates, Inc. v. Vassy,* 74 Ohio App.3d 537, 599 N.E.2d 734 (1991), to support this assertion. In that case, the directors of the aggrieved corporation formed a new entity which operated from the same premises and conducted the same business with the same equipment and employees as the *former* corporation. The court in *Frank Lerner & Associates* found that the directors' actions constituted a breach of fiduciary duty regardless of the fact that the former corporation had lost its financing. The court supported this finding by noting that the directors failed to seek alternative forms of financing for the former corporation.[1]

The Court is not persuaded that the Trustee's burden has been met. First, it was established at trial that Mrs. Holland exhibited good faith in believing that the Debtor was not a viable corporate entity in 1994. The provisions of O.R.C. § 1701.59(B) allow a director to rely upon financial statements that are prepared by professionals to determine what actions are in the best interest of the corporation. This belief was supported by the Debtor's own financial statements which showed taxable income of $5,318.00 in 1993 followed by a $3,700.00 loss in 1994. The Debtor, in 1994, was encumbered by a note held by Banc One in the amount of $123,457.00 which was secured by all of the Debt-

---

1. The Trustee also cites to a decision entitled *Prodan v. Hemeyer,* 80 Ohio App.3d 735, 744, 610 N.E.2d 600, 606 (1992), to support his proposition that once evidence is presented that Mrs. Holland breached her fiduciary duty by usurping corporate opportunities of the Debtor, the burden of proof shifts to Mrs. Holland to prove that these corporate opportunities were not available to the Debtor due to the customers' wishes.

or's assets. It was determined that Banc One demanded accelerated monthly payments of $3,000.00 on that note. It is also clear that the Debtor, rather than paying its debt to Banc One consistently, was at best meeting its obligation sporadically. *See,* Trustee's Exhibits 11–16. The Trustee provided evidence that the Debtor was paying all creditors except for Banc One. However, Mrs. Holland testified that the other creditors which were paid were her suppliers who required timely payment to ensure delivery of goods to keep the Debtor operational. In fact, Banc One ultimately did seize all of the Debtor's inventory and foreclosed on Mrs. Holland's residence to partially satisfy the amount owed on the note. *See,* Defendant's Exhibits D & E.

Furthermore, the new inventory used to operate Beau Maison was purchased by David Holland, the present husband of Mrs. Holland. Mr. Holland testified that he extended credit to his wife to start Beau Maison but would not have done the same for the Debtor because of the Debtor's financial condition and he did not trust Mrs. Holland's former husband. Mrs. Holland also testified that she spoke with Mr. Binge and, ironically, indirectly with Mr. Kandel, who ultimately became the Trustee and Plaintiff in this matter, about how to keep the Debtor operational but was informed that the Debtor was not a viable corporate entity.[2]

Mr. Binge testified that he was rejected in his attempt to obtain financing from Key Bank to operate the Debtor. He also stated that Mrs. Holland only received a salary of $16,800.00 in 1994 because the Debtor reported negative retained earnings of $78,688.00 in that year. Furthermore, Mr. Binge claimed that the Debtor's stock was not transferred to the "Common Law Business Trust" because it had no value. The Court finds that additional evidence of Mrs. Holland's good faith is established by her willingness to delay the filing of the Debtor's bankruptcy until June 15, 1995, in order to complete all outstanding customer orders.

The cases which the Trustee cites in support of his position are distinguishable from the case before the Court. First, the Trustee cites to a case entitled *Prodan v. Hemeyer,* 80 Ohio App.3d 735, 744, 610 N.E.2d 600, 606 (1992), for the proposition that "where evidence of the usurpation of corporate opportunity is presented, . . . 'the fiduciary bears the burden of establishing that an opportunity in the corporation's line of business is unavailable to it because of the wishes of the offeror.'" The Court, however, need not address whether the burden of proof shifted to Mrs. Holland because the Trustee has not proven that the Debtor was financially capable of assuming any corporate opportunities which were presented to it or that Mrs. Holland has acted in bad faith. Second, the case entitled *Frank Lerner & Associates v. Vassy,* 74 Ohio App.3d 537, 599 N.E.2d 734 (1991), is also distinguishable for the same reasons. The court in *Frank Lerner & Associates* found that the subject corporation could take advantage of the corporate opportunities because the directors did not seek alternative sources of financing to keep the corporation operational. In the instant case, however, evidence was presented that Banc One, which possessed a security interest in all of the Debtor's tangible assets, demanded an increased monthly repayment schedule of $3,000.00 which, along with payments to suppliers, was impossible for the Debtor to meet on any consistent basis. Further, Mr. Binge testified that he did seek alternative sources of financing but was rejected based on the Debtor's financial condition.

Ohio Revised Code § 1701.59(D) requires the Trustee to show that the actions of Mrs. Holland were undertaken with "deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation." Similarly, Ohio Revised Code § 1701.59(C)(1) states that "a director shall not be found to have violated his duties under [1701.59(B) ] unless it is proved by clear and convincing evidence that the director has not acted in good faith . . ." in order to prevail under a claim of breach of fiduciary duty. The Court finds

2. It appeared from the testimony that Mr. Kandel was not retained by Mrs. Holland; rather, before the bankruptcy proceeding was commenced, he was consulted, in view of his bankruptcy expertise, by another attorney, acting on Mrs. Holland's behalf.

that the Trustee has not proven by clear and convincing evidence that Mrs. Holland has not acted in good faith for the best interests of the Debtor. In light of the Debtor's financial condition, including reporting a loss in 1994 and its burden of making increased monthly payments of $3,000.00 to Banc One as well as making payments to its suppliers in order to remain in business, the Court finds that the Debtor was not financially able to accept any of the opportunities which were seized by Beau Maison. Mrs. Holland properly used her business judgment, after consulting with her accountant and other professionals, that the Debtor was no longer a viable corporate entity which could handle such opportunities.

Moreover, Mrs. Holland cannot be found to have violated her fiduciary duty to the Debtor by transferring the Debtor's assets to Beau Maison through the "Common Law Business Trust" because all of the Debtor's tangible assets were, in fact, seized by Banc One. The Court also must note that it does not agree with the Trustee's claim that Mrs. Holland should not be allowed to use her talents as an interior designer in another business venture in light of the Debtor's financial failure. Mrs. Holland provides a unique personal service to customers in which her talents should be able to be used in another business venture especially where, under the evidence presented, the Debtor is unable to remain a viable corporate entity. Accordingly, the Court cannot find that Mrs. Holland acted in bad faith in closing the Debtor and opening a new entity through credit extended from her new husband.

### Civil Conspiracy

The Trustee has also alleged a count of civil conspiracy against Mr. Binge for assisting Mrs. Holland in forming the "Common Law Business Trust" to facilitate the transfer of the Debtor's corporate opportunities to Beau Maison. Civil conspiracy has been defined in Ohio as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Gosden v. Louis,* 116 Ohio App.3d 195, 218–219, 687 N.E.2d 481, 496 (1996) (citations omitted). However, an un-derlying unlawful act must be proven to support a claim of civil conspiracy. *Id.* As the Court has found that Mrs. Holland did not breach her fiduciary duty to the Debtor, the Trustee's allegation of a civil conspiracy between Mr. Binge and Mrs. Holland must also fail. Accordingly, the Trustee's Complaint is hereby **DISMISSED.**

### ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the Court finds that Plaintiff, James R. Kandel, the Chapter 7 Trustee (Trustee) for McCalla Interiors, Inc. (Debtor), has failed to meet his burden in proving, by clear and convincing evidence, that Defendant, Josette Holland, breached her fiduciary duty to the Debtor by usurping corporate opportunities. Accordingly, the Trustee's Second Amended Complaint is hereby **DISMISSED** as to all Defendants.

IT IS SO ORDERED.